## STATE v. POULIS.

No. 2666.    Decided January 9, 1915 (145 Pac. 1044).

1. GAMING—OFFENSES—WHAT CONSTITUTES. Under Comp. Laws 1907, section 4261, as amended by Laws 1911, chap. 134, providing that every person who deals, carries on, or conducts any game of faro or any game played with cards for money or thing of value shall be guilty of felony, it is not necessary to a conviction to prove that accused was conducting or had conducted a regular gambling house or was habitually engaged in gambling; the offense being complete if accused conducts or carries on the game in any place. (Page 341.)

2. CRIMINAL LAW—APPEAL—HARMLESS ERROR. In a prosecution for violating Comp. Laws 1907, section 4261, denouncing the offense of conducting games of chance, accused cannot complain that the court and the prosecuting attorney treated the prosecution as one for conducting a regular gambling house and required proof to that effect; the error being harmless under section 4975, requiring the disregarding of errors not affecting the substantial rights, because imposing on the state a greater burden than imposed by statute. (Page 341.)

3. CRIMINAL LAW — APPEAL — PRESENTATION OF ERRORS BELOW. Accused cannot on appeal complain of the admission of testimony received without objection. (Page 345.)

4.  GAMING — PROSECUTION — EVIDENCE — SUFFICIENCY.  Whether
accused was the owner and was carrying on a game of chance
*held* a question for the jury.  (Page 345.)

STRAUP, C. J. dissenting.

Appeal from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Tom Poulis was convicted of a crime and he appeals.

AFFIRMED.

*Joseph W. Rozzelle* for appellant.

*A. R. Barnes,* Attorney General, and *E. V. Higgins* and
*G. A. Iverson,* Assistant Attorneys General for the State.

FRICK, J.

The defendant was convicted of the offense defined in
Comp. Laws 1907, section 4261, as amended by chap-
ter 134, Laws 1911, p. 265.  That section, so far as **1, 2**
material here, provides:

"Every person who deals, or carries on, opens or causes to
be opened, or who conducts, either as owner or employe,
whether for hire or not, any game of faro, monte, roulette,
* * * or any game played with cards, * * * for
money, checks, credit, or any other representative of value
shall be deemed guilty of a felony," etc.

The charging part of the information is in the following
words:

"That the said Tom Poulis, at the County of Salt Lake,
in the State of Utah, on the 14th day of December, A. D.
1913, did willfully, unlawfully, and feloniously carry on,
open, conduct, and cause to be opened and conducted, as
owner, at those certain premises described and known as No.

533 West Second South Street, in Salt Lake City, Salt Lake County, State of Utah, a certain card game; said game being then and there played with cards for money.''

In the introductory part of the information the offense was designated as ''conducting a gambling house.'' A trial to a jury resulted in a verdict of guilty. Judgment was entered on the verdict, and the defendant appeals.

A number of errors are assigned. We shall consider those only which are deemed worthy of consideration and are alleged by the defendant to be prejudicial to his rights.

The court, in its charge to the jury, copied in full that portion of the statute we have quoted, and also set forth at large in its charge the information upon which the defendant was tried. The court also charged the jury as follows:

''As to whether or not proof of a single game being conducted is sufficient to warrant a conviction, it may or may not, according to what you may deem to be the weight of the evidence in the case bearing upon the question at issue. The charge is that he was conducting a gambling house. Under some circumstances proof of carrying on a single game might not be sufficient to show such a line of conduct as would amount to proof of that charge; but under other circumstances (that is, the circumstances shown in the evidence, I mean) it may be sufficient proof, if, taken in connection with all the facts in evidence, it convinces you that proof of a single game being conducted, if you find one game was conducted, under the circumstances; and, in view of all the testimony with reference to the previous conduct of the defendant, it may be sufficient, if you are satisfied the entire evidence does support the charge.''

The giving of this instruction is assigned as error, and counsel insists that the defendant was prejudiced thereby.

The principal evidence adduced by the State was that of an eyewitness, who looked through the glass door leading into the room where the card game was being played in what is termed a Greek coffee house, which was owned, or at least

conducted, by the defendant. In looking into the room the witness saw a number of men sitting around a table playing cards for money. He also saw a large number of others in the room, some standing around the table at which the card game in question was being played, while others sat at other tables playing cards; but no money was observed at the other tables. He watched the men playing cards for twenty or thirty minutes; saw them handling money. Finally one of those in charge of the room opened the door, at which the witness was standing, which apparently was locked or bolted from the inside. As soon as the man opened the door the witness, who was a police officer, forced his way into the room, and, as soon as he entered it and was seen, those directly engaged in the card game which was being played for money fled and left the money and a deck of ordinary playing cards on the table. The witness gathered up the money, amounting to $38.15 in silver, gold, and paper, and also took the deck of cards, and sealed the money and cards in an envelope and took the same with him to the police station. He also then and there arrested the defendant and took him to the police station. The evidence was ample to justify a finding that the game referred to in the information was played with cards; that it was played for money; and that the game was owned or conducted by the defendant.

The trial court, it seems, took the view, and counsel for the State maintain the same view in their brief, that the defendant was charged with "conducting a gambling house." We cannot yield assent to this view. The charge in the information was in the language of the statute; and, if it were necessary to give the offense a name, the only name that we can conceive to be proper, when stated in the most general terms, would be "gambling." All that is necessary for the State to prove, aside from the jurisdictional and technical matters, under an information like the one set forth above, is that the accused, either as owner or as the employé of another, whether for hire or not, has carried on or conducted any game played with cards, which game was played for money, credit, or for some other representative or thing of value. It is not necessary, therefore, to prove that the accused

is conducting or has conducted a gambling house, or that he is habitually engaged in gambling; but it is enough if the things we have before enumerated are proved beyond a reasonable doubt. Moreover, the offense is complete if the game is played, carried on, or conducted in any house, street, or alley, or other place, public or private; and it is sufficient that it be played only once or for any indefinite length of time, if played for money, credit or other representative or thing of value. The court, in the charge complained of, therefore, required the State to prove more than was necessary under the statute and under the charge contained in the information. The court in that connection, however, also charged the jury respecting the elements of the crime charged in the information, and that it was necessary to establish all of them, beyond a reasonable doubt. Indeed, under the instructions of the court, and in view that the defendant was apprehended while in the very act of conducting a game played with cards for money, the jury, in order to find him guilty of conducting a gambling house, must necessarily also have found him guilty of conducting a game played with cards for money, as charged in the information.

The whole matter, therefore, amounts to this: That the court required the State to prove more than was necessary to convict under the information. This could not have prejudiced him. Nor could the fact that both court and counsel for the State designated the offense as conducting a gambling house have prejudiced him. It was not essential to give the offense any specific name. If, in the introductory part of the information, the offense had been designated as a "felony," or as "gambling," either would have been sufficient; and the mere fact that it was designated as "conducting a gambling house" could not have prejudiced the defendant. He was charged as the statute requires, and that was sufficient. To reverse the judgment on the foregoing grounds, as we are urged to do by the defendant, would require us to fly in the very teeth of our Criminal Code (Comp. Laws 1907, section 4975), which reads as follows:

"After hearing an appeal, the court must give judgment

without regard to technical errors or defects or exceptions which do not affect the substantial rights of the parties.''

At the trial the State offered in evidence a stipulation which was signed by the defendant's attorney, in which he, in the absence of the defendant, admitted that the statements made by the witness, which we have in part set forth, were true, and that said sum of $38.15, taken by said witness from the table, as herein stated, ''belongs to the defendant.'' The stipulation was admitted in evidence without objection, but it is nevertheless claimed that error was committed in receiving it. This contention is not tenable. We cannot review an alleged error in the admission of evidence, unless the party complaining has timely objected to its admission and has saved an exception to the ruling of the court. The question argued by counsel is therefore not before us for review. Neither did the court err in its charge to the jury in which said stipulation was referred to. What the court said in that regard was, if anything, more favorable to the defendant than he was entitled to under the law.

Nor can the contention prevail that the State did not prove that the defendant was the owner of the card game referred to in the information. As already pointed out, at and for some time before the time that the officer forced his way into the room where the game was being played, there were a large number of men in the room, some of whom were standing around and near the table at which the game was being played for money. They apparently were the friends, or at least the customers, of the defendant. The jury may have assumed that it was comparatively an easy matter for the defendant to have proved, by disinterested witnesses, his relation to the card game; and, not having done so, they, under the circumstances, no doubt inferred, as they had a right to do, that he owned and conducted the game. The fact that he personally undertook to deny his connection with the game, when apparently he could have called a number of disinterested witnesses, in no way affected the right of the jury to make the inferences we have suggested. While it is true that there is no direct evidence connecting the defendant with the game as owner, yet there are some facts and circum-

stances which, in our judgment, are sufficient to authorize a finding by the jury that he was the owner. The question is not whether we consider the evidence sufficient to justify a finding, but it is whether there is any substantial evidence, either direct or inferential, which justifies reasonable men to so find. In crimes that may be committed in secret, and usually are so committed, like the one in question, this court, in our judgment, should be slow in substituting its judgment for that of the jury.

A careful examination of the record discloses no reversible error. The judgment is therefore affirmed.

McCARTY, J., concurs.

STRAUP, C. J.

I dissent on the ground of insufficiency of the evidence to support a conviction under section 4261. Under that section, to deal, carry on, open, or cause to be opened, or to conduct, either as owner or employé, any game with cards for money or other thing of value, is a felony. Under section 4262:

"Who knowingly permits any of the games mentioned in the preceding section to be played, conducted, or dealt in any house owned or rented by such person, in whole or in part, and any person who plays at or against any of said prohibited games is guilty of a misdemeanor."

Thus to conduct or carry on "as owner or employé" any of the games mentioned in the first section is a felony; to knowingly permit any "to be played, conducted, or dealt in any house owned or rented by such person," permitting it, is, under the second section, a misdemeanor. The defendant was informed against under the first section.

The state produced but one witness—the police officer who made the arrest. His testimony in brief is that the defendant, a Greek, was the owner or had charge of a coffee house in Salt Lake City. The witness at midnight, looking through a glass door at the rear of the premises for twenty or thirty minutes, saw, as he estimated, about one hundred Greeks in the defendant's place of business. He saw five of them seated at a table playing cards for money, some standing around the

table, watching the game, and others seated at other tables, but did not testify that they were playing cards or doing anything out of the way, and testified that "they were not gambling at any other table," except the table where the five were seated. He saw those play six or seven hands; first one then another playing, dealing the cards. When asked if he saw the defendant and what he did, he testified that he saw him about the building with an apron on, with two others, apparently employés, serving coffee and refreshments. He did not testify that he saw the defendant or any of his employes or servants at or about the table where the cards were played, or that he or any of them had anything to do with the game or was in any manner connected with it, or that it was conducted or carried on by him or by any one, except the five Greeks seated around the table playing. The rear door was unbolted by some one coming out. The witness then entered the room and rushed to the table and seized the money and cards on the table. The five men playing at the table, seeing the witness was an officer, became "frightened" and "stampeded," as testified to by him, and that "every one of them got away. They left the cards and the money on the table, and every one of them made good his escape through the front door," as did others standing around watching the game. He testified that when he got to the table the five men playing were seated at the table, and, when asked if he made any effort to arrest them, answered, "I didn't have any time." When asked if he gave orders of any kind to them, he but answered, "They were gone so quick I didn't have time to give any orders." Then he arrested the defendant, and took him, the money and the cards to the police station.

Now, I think it sufficiently shown that a game of cards for money was played in the defendant's place of business. And I think it also sufficiently shown to justify the inference that it was played with his knowledge and consent; that he "knowingly permitted" it "to be played, conducted, or dealt." But that rendered him guilty of only a misdemeanor under section 4262, and not of the felony charged under section 4261. To properly convict him of the charged offense, I think there must be some evidence to show that he, "as owner or em-

ployé," carried on or conducted the game, not necessarily direct and positive evidence, still some facts from which that may fairly be inferred. I find no such proof. To prove that he "knowingly permitted" the game "to be played, conducted, or dealt," in his house by others in no sense his employés, servants, or agents, and without attempting to show that he or any of his employés, servants, or agents was in any manner connected with the game or conducted or carried it on, except that he "knowingly permitted" it "to be played" in his house, does not suffice. For that, under the statute, renders him guilty of only a misdemeanor. And of course from proof which but shows the lesser the greater offense, the felony may not be inferred.

I see nothing in the defendant's testimony to help the State, for he, by his testimony, denied everything, except that he was in and about the room taking and serving orders for coffee and refreshments. He, by his testimony, denied that he gambled that night; that he saw others gambling; that he saw money on the table; that it was his money; that he was interested in any game; or that any was played for him.

I think the defendant is entitled to have the case remanded, with directions to either grant him a new trial, or, on the theory that the lesser is included within the greater offense, to sentence him for the former—a misdemeanor—under section 4262.